**FILED**
September 08, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: CM
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CANAL INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | 5:25-CV-01748-MA |
| | § | |
| ABLE LOGISTICS, LLC, and AZALIA SAUCEDO, Individually and on behalf of the Estate of DAVID EMMANUEL SALAZAR, | § § § | |
| | § | |
| Defendant. | § | |

**OPINION AND ORDER**

The Court now considers Plaintiff Canal Insurance Company's ("Canal") Motions for Default Judgment against Defendants Able Logistics, LLC ("Able Logistics")[1] and Azalia Saucedo, individually and on behalf of the Estate of David Emmanuel Salazar ("Saucedo")[2] (collectively, "Defendants"). Having considered the motions, record, and relevant legal authorities, the Court **GRANTS** the instant motions and grants **JUDGMENT** in favor of Plaintiff and against Defendants Able Logistics and Azalia Saucedo.

## I. Background

This is an insurance suit regarding coverage for claims asserted against Able Logistics in a suit styled *Azalia Saucedo, Individually and On Behalf of the Estate of David Emmanuel Salazar v. Amazon Logistics, Inc.; Able Logistics, LLC; and Vigor Productions Co, LLC*, Cause No. 2024CI22392, pending in the 131st J.D. Court, Bexar County, Texas (the "Underlying Lawsuit").[3]

---

[1] Dkt. No. 29.
[2] Dkt. No. 33.
[3] Dkt. No. 23, at ¶ 1.

The Underlying Lawsuit was a personal injury action against Able Logistics and other defendants arising "from fatal injuries suffered by David Emmanuel Salazar (hereinafter referred to as "Salazar"), in a . . . collision" that occurred on October 13, 2023, while Salazar was transporting a tractor-trailer owned by Able Logistics on behalf of Amazon Logistics, Inc.[4] The following relevant background was obtained from Plaintiffs' Second Amended Petition in the Underlying Lawsuit:

> Upon information and belief, at the time of the incident, Salazar was operating a tractor-trailer owned by Defendant Able Logistics . . . delivering and transporting goods for the benefit of Defendant Amazon, with a truck owned by Defendant Able Logistics, and was supposed to have a rest day on the afternoon of Thursday, October 12, 2023. Salazar, a 22-year-old young man, had worked Thursday from midnight through approximately 10:00am on the 12th. Instead of allowing him to rest that afternoon, Defendants, due to the pressure Amazon was putting on them for deliveries, called Salazar back in at approximately 4 p.m. that same Thursday to return to work. Salazar worked from approximately 4pm that Thursday, October 12 until 4:54 a.m. on Friday morning of October 13.
>
> Due to the heavy shift and lack of rest allowed, Salazar, while driving fatigued and traveling westbound on Interstate Highway 10 in the early hours of the morning, at approximately 4:54am, Salazar's tractor trailer pulled to the right of the right lane. In an attempt to correct the tractor-trailer, Salazar over corrected the tractor-trailer, lost control, and smashed head-on into a rock wall barrier located on the left side of the lane. As a result of the collision, Salazar suffered critical injuries for some moments, before succumbing to his injuries, and passing away at the scene.
>
> Upon information and belief, at all times relevant to this cause of action, Salazar was working as a Form 1099-NEC independent contractor for Defendant Able Logistics who had control over Salazar's driving schedule, the tractor-trailer that Salazar was driving at the time of the incident and was responsible for establishing safety policies and procedures that, at a minimum, met Federal and State requirements and failed to do so. At all times relevant to this lawsuit, Defendant Able Logistics had the duty to exercise ordinary care in operating, managing, supervising, and/or

---

[4] Dkt. No. 1-2, at ¶ 12.

> monitoring its drivers, contractors, and/or agents in a reasonable, safe, and prudent manner.
>
> [. . .]
>
> Upon information and belief, Defendant Able Logistics had a Master Service Agreement with Defendant Amazon that specified non-delegable duties on the part of Able Logistics, which Defendant Able Logistics attempted to pass on . . . . At all times relevant to this lawsuit, Defendant Able Logistics had the duty to exercise ordinary care in inspecting, repairing, maintaining, and operating its equipment—including the tractor-trailer that Salazar was driving at the time of the incident—in a reasonable, safe, and prudent manner that, at a minimum, met Federal and State requirements and failed to do so. Furthermore, Defendant Able Logistics had the duty to supervise, train, and pass on any trainings to [the contracting] Defendants . . . and failed to do so.[5]

At the time of this incident, Able Logistics had a commercial auto and general liability package policy (Policy No. CT0111911532) (the "Policy") from Canal.[6] In the instant action, Canal seeks a judicial declaration holding that it owes no duty of defense under this Policy for the allegations asserted against Able Logistics in the Underlying Lawsuit, and that it owes no part of any judgment that Saucedo may obtain against Able Logistics in the Underlying Lawsuit.[7]

## II. Procedural History

Canal commenced this action on December 15, 2025, against Defendants Able Logistics, Amazon Logistics, Inc., and Saucedo.[8] Summons were issued as to Able Logistics on January 6, 2026,[9] and reissued on March 4, 2026.[10] A return of service for the executed summons was filed for Able Logistics on May 8, 2026.[11] Counsel for Canal provided Saucedo's counsel a written request by e-mail to accept service on his client's request, along with a copy of Canal's Original

[5] Dkt. No. 1-2, at ¶¶ 12–17.
[6] Dkt. No. 23, at ¶ 23.
[7] Dkt. No. 23, at ¶¶ 3–4, 31–35, 45–46.
[8] Dkt. No. 1.
[9] Dkt. No. 6.
[10] Dkt. No. 17.
[11] Dkt. No. 24.

Complaint and waiver of service, on January 17, 2026.[12] Counsel for Saucedo accepted service on behalf of Saucedo on February 19, 2026.[13] Thus, service was executed on all parties named in Plaintiff's complaint.

On July 9, 2026, Canal filed a motion to dismiss Amazon Logistics, Inc. with prejudice.[14] The Court granted Canal's motion on August 27, 2026.[15] Neither Able Logistics nor Saucedo have appeared in this action. Canal filed its request for Clerk's entry of default for Able Logistics on June 10, 2026,[16] and for Saucedo on June 12, 2026.[17] The Clerk's entries of default were subsequently entered as to both Defendants.[18]

## III. Discussion

### a. Jurisdiction

The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).[19] Canal alleges that it is a citizen of South Carolina,[20] and both Able Logistics and Saucedo are citizens of Texas.[21]

As to the amount-in-controversy, Canal makes only the bare assertion that the amount in controversy exceeds the statutory minimum required for diversity jurisdiction.[22] "When an insurer seeks a declaratory judgment on coverage issues, the amount in controversy is equal to the insurer's potential liability under the policy, plus potential attorney's fees, penalties, statutory damages, and

[12] Dkt. No. 27, at 2.
[13] Dkt. No. 27, at 2.
[14] Dkt. No. 31.
[15] Dkt. No. 34.
[16] Dkt. No. 25.
[17] Dkt. No. 27.
[18] Dkt. Nos. 28, 32.
[19] The Court notes that Canal asserts in its Complaints that "[t]his Court also has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201." Dkt. No. 23, at ¶ 9. This is incorrect. The Declaratory Judgment Act provides a remedy for cases within the Court's jurisdiction, but does not independently grant jurisdiction in and of itself.
[20] Dkt. Nos. 23, at ¶ 5; 13, at 1.
[21] Dkt. No. 23, at ¶¶ 6, 8.
[22] Dkt. No. 23, at ¶ 9.

punitive damages."[23] In the Underlying Lawsuit, Saucedo asserts common-law wrongful-death claims and requests damages "including, but not limited to: (a) Physical pain and mental anguish, (b) Disfigurement, (c) Loss of earning capacity, (d) physical impairment, (e) Bodily injuries, (f) Conscious pain, suffering and excruciating physical agony prior to death, and (g) Funeral expenses" on behalf of Decedent David Emmanuel Salazar, as well as various individual damages for financial and emotional losses, "[p]ast and future medical and counseling expenses," and punitive damages.[24] In light of the nature and extent of the damages sought, the Court finds that it is apparent from the face of this petition that the relief sought by Saucedo in the Underlying Lawsuit would be exceedingly likely to exceed $75,000.[25] Jurisdiction is therefore properly laid in this Court.

**b. Legal Standard**

Obtaining a default judgment is a three-step process: "(1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment."[26] Once entry of default is made, "plaintiff may apply for a judgment based on such default. This is a *default judgment*."[27] Defendants Able Logistics and Saucedo have defaulted by failing to answer or otherwise appear in this case and the clerk has already entered default against them.[28] The only remaining question is whether the third step, entry of default judgment, is appropriate.

Federal Rule of Civil Procedure 55(b) authorizes entry of default judgment with court approval, which is not lightly granted. Default judgments are a disfavored and drastic remedy,

---

[23] *Nat'l Liab. & Fire Ins. Co. v. Mercado*, No. 5:19-CV-131, 2021 WL 2322939, at *2 (S.D. Tex. Feb. 1, 2021) (quoting *Hanover Ins. Co. v. Superior Labor Servs., Inc.*, 179 F.Supp.3d 656, 672 (E.D. La. 2016)).
[24] Dkt. No. 1-3, at ¶¶ 33–35.
[25] *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (internal citation omitted).
[26] *Bieler v. HP Debt Exch., LLC*, No. 3:13-CV-01609, 2013 WL 3283722, at *2 (N.D. Tex. June 28, 2013) (citing *N.Y. Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir. 1996)).
[27] *N.Y. Life Ins. Co.*, 84 F.3d at 141.
[28] Dkt. Nos. 28, 32.

resorted to only in exceptional circumstances such as an unresponsive party.[29] The Court will not grant default judgment automatically or as a matter of right, even if a defendant is in default.[30] Whether to grant default judgment is left to the sound discretion of the district court.[31] Adjudicating the propriety of default judgment is itself a three-step process.

First, the Court must determine whether the plaintiff's claims are well-pled and substantively meritorious.[32] After all, a defendant's failure to answer or otherwise defend does not mean the particular legal claims levied are valid and merit judgment against the defendant.[33] When analyzing the merits of claims, the Court may assume the truth of all well-pled allegations in the plaintiff's complaint because all defaulting defendants functionally admit well-pled allegations of fact.[34] But the Court will not hold the defendants to admit facts that are not well-pled or to admit conclusions of law.[35]

Second, if the plaintiff states a well-pled claim for relief, the Court examines six factors to determine whether to grant default judgment:

> [W]hether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion.[36]

Third, if the plaintiff's claims are meritorious and default judgment appears appropriate, the Court must determine whether the requested relief is proper. Specifically, default judgment

---

[29] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).
[30] *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).
[31] *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).
[32] *See Wooten v. McDonald Transit Assocs.*, 788 F.3d 490, 498 (5th Cir. 2015).
[33] *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[34] *Id.*; *see Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992) ("Unlike questions of actual damage, which must be proved in a default situation, conduct on which liability is based may be taken as true as a consequence of the default.").
[35] *Escalante v. Lidge*, 34 F.4th 486, 493 (5th Cir. 2022) (citing *Nishimatsu Constr. Co.*, 515 F.2d at 1206).
[36] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

"must not differ in kind from, or exceed in amount, what is demanded in the pleadings."[37] The Court will determine how to calculate damages. The general rule is "unliquidated damages normally are not awarded without an evidentiary hearing" but the exception is when "the amount claimed is a liquidated sum or one capable of mathematical calculation."[38] When this exception applies, there is no need for an evidentiary hearing and the Court can enter default judgment on the papers.

**c. Analysis**

*1. Duty to Defend*

Under the Texas eight-corners rule, an insurer's duty to defend arises if the insured is sued and the complaint alleges facts that are potentially covered.[39] "[T]he scope of an insurer's duty to defend is determined exclusively by the allegations in the pleadings and the language of the insurance policy."[40] If the pleadings alone do not allege facts within the scope of coverage, the insurer is not legally required to defend.[41]

A review of the Policy provided by Canal and the allegations of Saucedo's Second Amended Petition in the Underlying Lawsuit show that Canal owes no duty of defense to Able Logistics in the underlying Lawsuit. The Policy, as provided by Canal in its Amended Complaint, provides coverage for:

> . . . all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance

[37] FED. R. CIV. P. 54(c); *see also Ditech Fin., L.L.C. v. Naumann*, 742 F. App'x 810, 813 (5th Cir. 2018) (holding that rendering relief in a default judgment differs from other kinds of judgment).
[38] *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (quoting *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).
[39] *Mercado*, No. 5:19-CV-131, 2021 WL 2322939, at *4 (citing *GuideOne Specialty Mut. Ins. Co. v. Missionary Church of Disciples of Jesus Christ*, 687 F.3d 676, 682–83 (5th Cir. 2012)); *see also Nat' Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).
[40] *Mercado*, No. 5:19-CV-131, 2021 WL 2322939, at *4 (citing *GuideOne Specialty*, 687 F.3d at 682–83).
[41] *National Union*, 939 S.W.2d at 141.

> applies, caused by an accident and resulting from the ownership, maintenance or use of a covered "auto[.]"[42]

However, the Policy contains various coverage exclusions, including a "Contractual Liability," "Employer's Liability," and "Aircraft, Auto or Watercraft" exclusion. The "Contractual Liability" exclusion provides that the Policy does not cover:

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
> (1) That the insured would have in the absence of the contract or agreement; or
> (2) Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:
> (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
> (b) Such attorneys' fees and litigation expense are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.[43]

The "Employer's Liability" exclusion provides that the Policy does not cover:

> "Bodily injury" to:
> (1) An "employee" of the insured arising out of and in the course of:
> (a) Employment by the insured; or
> (b) Performing duties related to the conduct of the insured's business; or
> (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

[42] Dkt. No. 23, at ¶ 24.
[43] Dkt. No. 23, at ¶ 25.

> This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury. This exclusion does not apply to liability assumed by the insured under an "insured contract".[44]

The Policy defines "employee" as:

> Any individual who in the course of his or her employment or contractual duties on behalf of any insured directly affects commercial motor vehicle safety. Such term includes but is not limited to a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), co-driver (including an independent contractor), a mechanic, and a freight handler.[45]

The "Aircraft, Auto or Watercraft" exclusion provides that the Policy does not cover:

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.[46]

The Policy contains an additional exclusion for punitive damages arising from claims:

> . . . for any actual 'Bodily Injury' . . . or any other damage sustained, or resulting from the multiplication of compensatory damages in whatever form assessed . . . regardless of whether the Punitive Damages are based upon the 'insured's' conduct or the conduct of some other party for whom the 'insured' may be legally responsible.[47]

---

[44] Dkt. No. 23, at ¶ 25.
[45] Dkt. No. 23, at ¶ 26.
[46] Dkt. No. 23, at ¶ 25.
[47] Dkt. No. 23, at ¶ 29.

The Court finds that all claims asserted against Able Logistics in the Underlying Lawsuit fall within one or more of these exclusions. Saucedo seeks damages for Salazar's bodily injury and wrongful death, as well as related consequential damages.

To the extent Saucedo seeks to hold Able Logistics liable for obligations it assumed in motor-carrier agreements with Amazon Logistics, Inc. or other defendants in the Underlying Lawsuit, although the terms of the relevant contracts are not before the Court, any assumed liability to Able Logistics contained in those agreements would fall under the Policy's Contractual Liability exclusion.[48]

Any such claims would also be independently foreclosed by the contract's Employee Liability exclusion. Regardless of whether Salazar was formally classified as an independent contractor by Able Logistics, the October 13, 2026 incident occurred while Salazar was performing "duties on behalf of [the] insured [which] directly affect[ed] commercial motor vehicle safety."[49] Salazar was therefore an "employee" of Able Logistics by the terms of the Policy.[50] Accordingly, Canal has no duty under the Policy to defend Able Logistics under this Policy for claims based on Salazar's bodily injury, including derivative claims brought by Salazar's parent "as a consequence" of that injury.[51]

As to Saucedo's claims in the underlying Lawsuit arising from negligent supervision, the Court finds that these claims, too, are excluded from coverage by the Policy's Aircraft, Auto or Watercraft exclusion. This provision expressly bars claims for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by

---

[48] *See* Dkt. No. 23, at ¶ 25.
[49] *See* Dkt. No. 23, at ¶ 26.
[50] The Court observes that Canal's motions include an assertion that Salazar is also a statutory employee of Able Logistics under Federal Motor Carriers Regulations. While this argument may have some relevance to determining the merits of Saucedo's claims against Able Logistics in the Underlying Lawsuits, it is inapposite here, where the Policy's definition of the term "employee" controls.
[51] *See* Dkt. No. 23, at ¶ 25.

or rented or loaned to any insured," including associated claims asserting negligent hiring, supervision, training, or monitoring.[52] Saucedo's negligent supervision claims arise from Salazar's bodily injury allegedly caused while he was operating a tractor-trailer entrusted to him by Able Logistics and, therefore, fall expressly under this exclusion.

Finally, as the Policy excludes punitive damages arising from the alleged bodily injury or related damages,[53] any such damages sought by Saucedo would be excluded from Canal's coverage obligations.

Accordingly, the Court finds that Canal has alleged sufficient well-pleaded facts to establish that none of Saucedo's claims potentially falls within the Policy's coverage. Canal therefore has no duty to defend Able Logistics in the Underlying Lawsuit.

*2. Duty to Indemnify*

"An insurer's duty to defend and indemnify are distinct and separate duties."[54] Although the duty to indemnify cannot typically be adjudicated until there has been a judgment in the underlying suit, an exception exists where "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify."[55]

The Court finds that the facts of this case permit the Court to adjudicate Canal's duty to indemnify under this exception. As discussed, Saucedo asserts no claim in the Underlying Lawsuit that is not expressly excluded by the terms of the Policy. According, and for the same reasons that negate Canal's duty to defend Able Logistics in the Underlying Lawsuit, the Court concludes that

[52] Dkt. No. 23, at ¶ 25.
[53] Dkt. No. 23, at ¶ 29.
[54] *National Liability*, No. 5:19-CV-131, 2021 WL 2322939, at *4 (quoting *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 430 (5th Cir. 2016) (quoting *Farmers Texas Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997))).
[55] *Id. See also GuideOne Insurance*, 828 F.Supp.2d at 862–63 (N.D. Tex. 2011) (citing *Griffin*, 955 S.W.2d at 84 (Tex. 1997)).

Canal has alleged sufficient well-plead facts to support a finding that Canal also has no duty to indemnify Able Logistics in the Underlying Lawsuit.

*3. Default Judgment*

The final step in assessing default judgment is to determine what form of relief, if any, a plaintiff should receive.[56] The Declaratory Judgment Act "authorizes the federal courts to 'declare the rights and other legal relations of any interested party seeking such declaration.'"[57] "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so."[58]

Canal requests that "this Court declare that Canal has no duty to defend an/or indemnify Able Logistics . . . and declare that Canal does not have an obligation to pay for any judgment to Saucedo, in whole or in part, on behalf of Able Logistics[.]"[59] Plaintiff requests no other relief. The Courts finds that Plaintiff has made a sufficient showing that declaratory relief is warranted.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motions for default judgment. The Court finds that:

1. Plaintiff Canal has no duty to defend Defendant Able Logistics, LLC in the Underlying Lawsuit;
2. Plaintiff Canal has no duty to indemnify Defendant Able Logistics, LLC for any and all damages that may be awarded against Able Logistics, LLC, in the Underlying Lawsuit; and

[56] *RLI Ins. Co. v. 2 G Energy Sys., LLC*, 581 F.Supp.3d 817, 823 (W.D. Tex. 2020); *see also L. Funder, L.L.C. v. Munoz*, 924 F.3d 753, 761 (5th Cir. 2019).
[57] *Val–Com Acquisitions Trust v. Chase Home Fin., L.L.C.*, 428 Fed. App'x 364 (5th Cir.2011) (quoting 28 U.S.C. § 2201(a))
[58] *Pub. Affs. Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) (internal citations omitted).
[59] Dkt. No. 23, at 16–17.

3. Plaintiff Canal has no obligation to pay for any judgment to Plaintiff Azalia Saucedo, Individually and On Behalf of the Estate of David Emmanuel Salazar, in whole or in part, on behalf of Able Logistics, LLC.

A final judgment in favor of Plaintiff and against Defendants Able Logistics, LLC and Azalia Saucedo will issue separately.

IT IS SO ORDERED.

DONE this 8th day of September, 2026, in San Antonio, Texas.

MICAELA ALVAREZ
SENIOR UNITED STATES DISTRICT JUDGE